IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

KENNETH EUGENE PURSER                                    PLAINTIFF

V.                                                       CIVIL ACTION NO.
                                                         2:07-CV-142

COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Kenneth Eugene Purser for a period of disability and disability insurance benefits under Title II and Supplemental Income (SSI) benefits under Title XVI of the Social Security Act. This action is brought pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). The district court's jurisdiction over Purser's claim rests upon 28 U.S.C. § 1331.

## PROCEDURAL HISTORY

Kenneth Eugene Purser filed his application for disability, disability insurance benefits and supplemental security income on November 1, 2004, alleging an onset date of disability of April 12, 2001. After his claim was denied twice, Purser requested a hearing before an administrative law judge (ALJ), which was held on September 19, 2006. On October 27, 2007, the ALJ issued his decision denying the claim, holding that the plaintiff was not entitled to a period of disability, disability insurance benefits and supplemental security income. Purser's request for review by the Appeals Council was denied on July 6, 2007. The Appeals Council's denial of the petition for review perfected the ALJ's decision as the final decision of the Commissioner, which is now ripe for the court's review.

## FACTS

Purser was born on September 1, 1968 and thirty-eight years old at the time of the disability hearing on October 27, 2006. The plaintiff attended special education classes and completed the eighth grade. At the time of his examination by Dr. Adams on April13, 2006, he was six feet four inches and weighed 346 pounds. Purser previously worked as a delivery driver, sales assistant and waiter among other jobs. ( R. 80). From approximately 2004 through the ALJ hearing date, the plaintiff worked from his home on a part time basis, answering the phones for his father's company. (R. 445-448). The plaintiff's compensation was retained by the company in order to provide the plaintiff with health insurance. (R. 449-450, 452). The quarterly earnings reports demonstrated that in the years 2004 and 2005, Purser earned approximately eight thousand dollars ($8,000) per year. (R. 450-51). The ALJ, however, found this was not sufficient to demonstrate that the plaintiff was engaged in "substantial gainful activity." (R. 17). The plaintiff alleged that he was no longer able to work due to degenerative disc disease, high blood pressure, a knee replacement, hypoglycemia and carpal tunnel syndrome. (R. 79). In addition to the extensive medical records from treating physicians that were presented for review, the plaintiff underwent an consultative examination by Dr. Adams on April 13, 2006.

The ALJ found that the plaintiff had the residual functional capacity (RFC) to perform a range of sedentary work activity that included the ability to lift and carry ten pounds occasionally and no weight frequently, stand or walk for two hours in an eight hour work day (for periods of five minutes without interruption), as well as sit for six hours in the same day (for uninterrupted periods of one hour). (R. 22). Further, the ALJ found that the plaintiff's RFC allowed him to occasionally engage in climbing, balancing, stooping, but that he could never crouch, kneel or crawl. (R. 22). Finally, the plaintiff was restricted from working at heights or with moving machinery. (R. 22). Based on the RFC and other vocational factors, the ALJ found

that there wer a number of jobs available which the plaintiff could perform. ( R. 24). Consequently, the ALJ found the plaintiff not disabled within the meaning of the Social Security Act.

## **DISCUSSION**

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner,[1] even if it finds that the evidence leans against the Commissioner's decision.[2] If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

---

[1] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[2] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[4] First, the plaintiff must prove he is not currently engaged in substantial gainful activity.[5] Second, the Commissioner considers the medical severity of the claimant's impairment.[6] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[7] Fourth, the Commissioner considers their assessment of the claimant's residual functional capacity and the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[8] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[9] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact,

---

[3] *See* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520(2007).

[4] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[5] 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(a)(4)(i)(2007).

[6] 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 404.1520(a)(4)(ii)(2007).

[7] 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404.1520(a)(4)(iii)(2007).

[8] 20 C.F.R. § 416.920(a)(4)(iv); 20 C.F.R. § 404.1520(a)(4)(iv)( 2007).

[9] 20 C.F.R § 416.920(a)(4)(v); 20 C.F.R. § 404.1520(a)(4)(v)(2007).

perform that work.[10]

>Purser alleges that the Commissioner erred in the following six ways:
>
>(1) mischaracterizing the plaintiff's ability to do work;
>(2) mischaracterizing the opinion of the consultive examiner;
>(3) confirming a job that a claimant never held;
>(4) improperly rejecting the plaintiff's subjective claims of pain;
>(5) failing to consider the combination of impairments effect of the plaintiff's ability to do work related activities; and
>(6) failing to consider the plaintiff's alleged impairment of sleep apnea.

There was substantial evidence in the record to support the ALJ's finding that the plaintiff was able to work on a part time basis, although not to a level of "substantial gainful activity." Purser testified that he worked on an occasional basis for his father's company by answering the phones from his own home a few hours a day, a few days a week. (R. 445-448). In exchange for his services, all of the plaintiff's gross earnings were retained by the company to pay for the his health insurance. (R. 449-450, 452). The fact that the plaintiff was compensated for his services with something of monetary value is validated by the earnings records. (R. 67). It is irrelevant that the plaintiff never received the money himself; he was compensated for his services with something of value-health insurance. The plaintiff attempts to cast some doubt on whether he actually worked those reported hours. (Pl. Br. 10). The court will not speculate on whether the plaintiff and his father were truthful in their reportings to the federal government or the insurance company regarding the actual numbers of hours that the plaintiff may have worked to earn that compensation. Consequently, the court finds that the ALJ's characterization of the plaintiff's ability to work was based on substantial evidence found in the record.

---

[10] *Muse*, 925 F.2d at 789.

The court finds that the plaintiff's argument that the ALJ mischaraceterized the consultative examiner's, Dr. Adams, report is without merit. It is uncontroverted that Dr. Adams stated that the plaintiff "was prone to dramatizations and histrionics during the session" and that the exam was "characterized by gross histrionics and dramatic behavior." ( R. 347, 350). Dr. Adams noted three times in his four page report that the plaintiff acted with "bizarre histrionics." The ALJ's notation of this behavior was supported by the substantial evidence in the record. In addition, the plaintiff made subjective statements to Dr. Adams that were not supported by the objective medical evidence, which undermined his credibility. For example, Purser told Dr. Adams that he had plaque build up in "four arteries." (R. 347). The cardiac catheterization conducted on April 20, 2006, one week after Dr. Adams' examination, revealed "normal coronary arteries." (R. 363). The plaintiff also told Dr. Adams that he had deterioration at C-5, C-6 and C-7 and described radicular pain. However, this statement was not supported by the medical records reviewed by Dr. Adams, which stated that there were some degenerative changes, but that the proposed interventions included weight loss, lumbar strengthening, and cervical isometric strengthening exercises and that surgery was not an option. (R. 389). Dr. Adams' examination was based mostly on the plaintiff's subjective complaints, certain medical records and his physical examination of the plaintiff. Dr. Adams noted that the diagnoses of morbid obesity, sleep apnea and two operations of the left knee were the only diagnoses confirmed by objective findings and that his opinion was primarily based upon the patient's subjective complaints; all of which was relevant in the ALJ's weighing of the evidence in the record. (R. 351). Consequently, the court does not find that ALJ mischaracterized Dr. Adam's report as his citations of the report were consistent with the content of the report.

The ALJ's statement regarding the plaintiff's previous employment as a courier service owner was harmless error. The ALJ did erroneously state that the plaintiff previously worked as a courier service owner, which was not supported by substantial evidence. The hypothetical situation presented to the Vocational Expert was based upon Dr. Adams' assessment of the plaintiff's physical abilities, not a previous history of a courier service owner. (R. 472). Although the ALJ's statement was incorrect, the VE's testimony was based upon the physical limitations described by Dr. Adams and does not appear to be influenced by the ALJ's mischaracterization of the plaintiff's past employment. (R. 473). Therefore, the court finds this to be harmless error and not grounds for reversal.

There is substantial evidence in the record to support the ALJ's assessment of the plaintiff's pain. At the hearing before the ALJ, the plaintiff testified that he experienced pain in his left knee that he rated as 6 out of 10 pain on four to five days a week. (R. 458). But, that the pain medication reduced the pain to a 3 on a scale of one to ten. (R. 459). In addition, the ALJ questioned the plaintiff regarding other remedies for the pain, his ability to care for himself and perform household chores. (R. 458-66). The ALJ evaluated Purser's reported pain symptoms in accordance with the standard set forth in 20 C.F.R. § 404.1529. The ALJ weighed factors that were relevant to Purser's symptoms including (1) his level of daily activity, (2) the location, duration and intensity of pain, (3) precipitating and aggravating factors;(4) the type, dosage and effectiveness of medications taken for the pain, including the side effects, (5) treatment other than medication for pain relief, (6) any measures used to relieve pain, and (7) other factors concerning functional limitations and restrictions due to pain. *See* 20 C.F.R. §§ 404.152 (c)(3) and 404.929(c). The ALJ then compared the plaintiff's objective medical evidence to his

7

testimony and found that the plaintiff was less than fully credible. This determination is supported by substantial evidence found in the record. The plaintiff has been less than credible when describing his impairments. For example, while the plaintiff has been diagnosed with chronic obstructive pulmonary disease and chronic bronchitis secondary to his heavy cigarette smoking history,[11] there is no evidence in the record to support his self diagnosis of asthma. In addition, the orthopedic surgeon noted that the plaintiff has an "extremely low pain threshold" and may have had narcotic disuse in the past. (R. 343). Finally, the plaintiff described failing every stress test,[12] which was not supported by the evidence found in the records. Therefore, there was substantial evidence in the record for the ALJ to determine that the plaintiff was less than fully credible when describing his pain and its effect as lifestyle limiting factor.

The plaintiff argues that the decision lacks a discussion of the combined effects of plaintiff's impairment upon him. Although an ALJ is under a duty to consider a claimant as a whole, in the Fifth Circuit an ALJ has clearly evaluated the cumulative effect of a claimant's impairments if, as here, the ALJ specifically found that the claimant failed to meet step three of the sequential evaluation process. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). The ALJ included within his findings that the instant record does not demonstrate that the plaintiff's impairments "meet or equal in severity the requirements of any Listing of Impairments set forth at Appendix 1 to the regulations (the third step in the sequential evaluation.)" (R. at 20). The ALJ met the Fifth Circuit standard for demonstrating that he considered the multiple impairments in combination; consequently, the court denies this issue as grounds for reversal.

---

[11] R. 295-96.

[12] R. 468.

The record demonstrates that the ALJ considered the plaintiff's pulmonary complaints including sleep apnea. The ALJ found that the plaintiff experienced a variety of ailments including sleep apnea, which "constitute 'severe' impairments within the meaning of the Regulations." (R. at 18). Considering the relative paucity of objective medical evidence demonstrating the plaintiff's sleep apnea condition,[13] the ALJ was unable to engage in a more detailed analysis of the plaintiff's sleep apnea. Yet, the ALJ did find that the plaintiff's sleep apnea was severe. The ALJ did thoroughly examine the results of the May, 2006 pulmonary function test and determined that the plaintiff did not experience any medically determinable "severe" pulmonary impairment. This determination was in accordance with the legal standard established in *Stone v. Heckler*, 752 F.22d 1099 (5th Cir. 1985). Therefore, there is substantial evidence in the record to support the ALJ's findings regarding both the plaintiff's sleep apnea and pulmonary condition.

The court finds that there is substantial evidence in the record to demonstrate that the ALJ properly performed the five step evaluation of the plaintiff's disability and applied the correct the legal standards as necessary. For the foregoing reasons, the court concludes that the Commissioner's final decision should be affirmed. A separate order of judgment affirming the Commissioner's final decision shall issue from the court on even date herewith.

This, the 29th day of September 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

[13] The pulmonologist recommended a sleep study to evaluate the plaintiff's description of sleep apnea. (R. 295). The consultative examiner noted that the plaintiff was recently switched from a CPAP to a BIPAP device for his sleep apnea. (R. 347).